D. C. STANDARD HOMES CO., A PARTNERSHIP, A. G. JOHNSON AND EDNA A. JOHNSON, TRUSTEE, PLAINTIFFS, v. N. C. STANDARD HOMES CO., A PARTNERSHIP, WILLIAM W. JOHNSON AND LOIS F. JOHNSON, TRUSTEE, PARTNERS, DEFENDANTS.

(Filed 24 July, 1967.)

1. Pleadings § 18—

Where the complaint is insufficient to state a cause of action as to one of the two purported causes of action asserted, there can be no misjoinder of parties and causes.

**2. Limitation of Actions § 16—**

Ordinarily, the statute of limitations may not be taken advantage of by demurrer.

**3. Pleadings § 19—**

Where the complaint alleges that under written contract plaintiff furnished plans, plates and plan books to defendant partnership without cost, plaintiff being a partner, it will be assumed that plaintiff's remuneration was to be from the profits of the partnership, and the complaint fails to state a cause of action to recover under the agreement a percentage of the amount received by the partnership from its resale of such plans, notwithstanding allegations that under the "agreement, custom and usage, and the said written contract" plaintiff was to be paid such percentage, since conflicting allegations neutralize each other.

APPEAL by plaintiffs from *Johnson, J.,* 25 July 1966 Assigned Civil Session of WAKE. This case was docketed and argued at the Fall Term as Case No. 539.

Action for an accounting. Defendants demurred to the complaint, which — except when quoted — is summarized below:

Since 1 January 1954, plaintiff, D. C. Standard Homes Company (D. C. Homes), has been a partnership composed of A. G. Johnson and Edna A. Johnson, trustee, with its principal office in Washington, D. C. Defendant, N. C. Standard Homes Company (N. C. Homes), is a partnership composed of William W. Johnson and Lois F. Johnson, trustee, with its principal office in Fuquay-Varina, North Carolina. Prior to 1 January 1954, plaintiff-partnership was composed of the four Johnsons, and defendant-partnership belonged to A. G. Johnson and William W. Johnson. On 31 December 1953, by a written agreement (attached to the complaint as Exhibit A and incorporated therein by reference), A. G. Johnson transferred one-half of his 50% interest in N. C. Homes to William W. Johnson and Lois F. Johnson, trustee. In consideration therefor, they transferred to him their entire interest in D. C. Homes. In the division contract it was agreed, *inter alia:*

"That William W. Johnson will be primarily responsible for the operation, and obligations, of the N. C. office, though A. Glendon Johnson will contribute such time as may be practical, such assistance as may be possible, and such legal liability as required by N. C. law for his retained 25% interest.

"That services to, and benefits from, the N. C. office will be in proportion to the ownership interest of the parties, as far as practical, it being contemplated that A. Glendon Johnson's contribution shall be primarily in the field of adequate preparation of new designs in advance of time for publications, furnished by himself or his assistants, and that William W. Johnson shall

have undisturbed responsibility for general office management and production, by himself or his assistants.

"That territory, as such, shall not be divided, except as made practical by specialization for better service to the public; plates, plans, trade agreements, personnel, customers, trade-name prestige, etc., will be shared on a mutually profitable basis."

Prior to 1 January 1954, both D. C. Homes and N. C. Homes were engaged in the business of selling plan books and blueprints for the construction of residences. After 1 January 1954, the custom, usage, and practice was that plaintiff-company created, composed, and marketed plans, blueprints and home plan books for the construction of residences with basements, and defendant-company created, composed and marketed plans and home plan books for residences without basements. "From and after January 1, 1954, by agreement between the parties and by custom practice and usage of plaintiff company and defendant company, and pursuant to said written agreement of January 1, 1954, plaintiff company was to receive from defendant company one-half of all proceeds received from the sales of basement-type plate plans. . . ."

Since 1 January 1954, plaintiff has fully complied with the terms of the agreement by supplying to defendant, as requested, *and without cost,* large and valuable supplies of house plans, tracings, plates, plan books, and original art works, which were produced and paid for by plaintiff. This material and property was used by N. C. Homes under and pursuant to the arrangement between the parties over the years and up until January 1963. "(F)or several years after January 1, 1954, defendant company paid over periodically to plaintiff company several thousand dollars each year as plaintiff company's one-half share of the proceeds of sales of said plates and plans, up until about the time a personal controversy arose between A. G. Johnson and William W. Johnson, at which time such payment from defendant company to plaintiff company diminished abruptly and was stopped completely in about January 1963."

On 6 February 1962, pursuant to an order of the Superior Court of Wake County, N. C. Homes was sold "as is including all assets and all liabilities" and "subject to questions as to ownership by the partnership of the 'name' and rights to use certain 'plates.'"

Plaintiff does not know the exact number and value of the properties it furnished defendant, but prior to 6 February 1962, D. C. Homes had shipped to defendant 50,000-70,000 house plan books having a value of $10,000-$20,000. Defendant stored these books and, from time to time, sold large quantities of them to various contractors, lumber dealers, etc., who thereafter ordered plans therefrom. Notwithstanding, defendant has withheld 50% of the proceeds

of said sales, and has refused to pay that amount to D. C. Homes, which is entitled to collect it. Plaintiff does not know the amount due, but defendant's record will disclose the sum it owes plaintiff.

Unless ordered to account to plaintiff, defendant will continue to use plaintiff-company's said properties and to profit unjustly therefrom without any payment to plaintiff. The prayer is that defendant be required "to file a complete accounting with the court, setting forth in detail each sale of plan books, plans, sketches, tracings, or blueprints it has made from plates or plan books owned by or furnished by plaintiff company to defendant company;" and that plaintiff recover of defendant such sum as the accounting may show it to be entitled.

Defendant demurred to the complaint (1) for a misjoinder of parties and causes of action; (2) because it appears that plaintiff's alleged cause of action arose more than three years before the institution of the action; and (3) for its failure to state a cause of action. Judge Johnson sustained the demurrer and plaintiffs appeal.

*Boyce, Lake & Burns for D. C. Standard Homes Company, plaintiff appellant.*

*Dupree, Weaver, Horton, Cockman & Alvis for defendant appellees.*

SHARP, J. Appeals in the litigation between A. Glendon Johnson and William W. Johnson growing out of the dissolution and sale of the partnership, N. C. Standard Homes Company, have been before us on three prior occasions. *William W. Johnson and Lois F. Johnson, Trustee, v. A. Glendon Johnson,* 255 N.C. 719, 122 S.E. 2d 676. *A. Glendon Johnson v. William W. Johnson and Lois F. Johnson, Trustee,* 259 N.C. 430, 130 S.E. 2d 876; *A. Glendon Johnson v. William W. Johnson,* 262 N.C. 39, 136 S.E. 2d 230.

Defendant's first ground for demurrer is that there is a misjoinder of parties and causes of action. It argues, however, that the contract of 31 December 1953 was with A. G. Johnson only and not the partnership, D. C. Homes, and that there is, therefore, a misjoinder of plaintiffs only. Although the complaint does not specifically allege an assignment, it is implicit therein that A. Glendon Johnson assigned to D. C. Homes whatever rights accrued to him under the contract executed on 31 December 1953. His partnership with his wife, Edna A. Johnson, trustee, was formed on 1 January 1954. Irrespective of any assignment, however, if the complaint discloses that Edna A. Johnson has no cause of action against defendant, there is no misjoinder of either parties or causes. *Conference v. Piner,* 267 N.C. 74, 147 S.E. 2d 581. The second ground for demur-

rer, that the complaint discloses that the cause of action arose more than three years before its institution, is likewise without merit. The statute of limitations may not be taken advantage of by demurrer. *Harrell v. Powell,* 251 N.C. 636, 112 S.E. 2d 81. We assume, therefore, that his Honor sustained the demurrer upon the basis that the complaint failed to state a cause of action, and it is to this ground that we direct our attention.

The 31 December 1953 contract between the Johnsons contains no provision that A. Glendon Johnson should receive one-half of the proceeds which N. C. Homes received from the sale of basement-type home plans. On the contrary, it provided that his contribution to the partnership, in which he had a one-fourth interest, should be the "adequate preparation of new designs in advance of time for publication, furnished by him or his agents." Although the contract speaks of sharing plans, plates, etc. "on a mutually profitable basis," it contains no provision for payment to the other by either A. Glendon Johnson (D. C. Homes) or William W. Johnson (N. C. Homes). Significantly, the complaint makes no mention of any payments made by plaintiff to defendant for the use of any basement-house plans furnished it by defendant. It does allege, however, that pursuant to the written contract plaintiff furnished the plates, plans, and house plan books to defendant *without cost.*

The written contract, which is the basis of plaintiff's action, is the antithesis of a lucid, legal document. Almost, it suggests a studied effort at ambiguity on the part of its draftsman. It does say with great clarity, however, "that this agreement contemplates no 'tax dodge' for any of the parties. . . ." Plaintiff bases its right to an accounting and a judgment against defendant upon the allegation that, by "agreement between the parties . . . custom, practice and usage of plaintiff company and defendant company, and pursuant to the said written agreement of January 1, 1954," it was to receive one-half of the proceeds from the sales of all basement-type plate plans. (Presumably, by the "written agreement of January 1, 1954," plaintiff meant the agreement of 31 December 1953, since the complaint speaks of 1 January 1954 as the "effective" date of the contract.) In its brief, plaintiff concedes that the custom and usage alleged in the complaint do not constitute a contract or take the place of a contract. Its contention is that, under the written contract, for more than nine years plaintiff and defendant "shared (plates and plans) on a mutually profitable basis," and that there was a *verbal* agreement with reference to remitting profits from sales by defendant company, which failed to remit after January 1963. Plaintiff has, however, alleged no modification of the written contract nor the substitution of a subsequent oral agreement for the written con-

tract in which A. Glendon Johnson was obligated to furnish plates and plans to defendant as his contribution to the partnership, N. C. Homes, in which he owned a one-fourth interest. The complaint, which is not the "plain and concise statement of the facts constituting the cause of action" which G.S. 1-122(2) contemplates, merely lumps "agreement, custom and usage, and the said written contract." It appears that the complaint contains conflicting and repugnant allegations of fact which "destroy and neutralize each other" — as Parker, C.J., said with reference to another complaint in one of the actions between A. Glendon Johnson and William W. Johnson. *Johnson v. Johnson*, 259 N.C. 430, 439, 130 S.E. 2d 876, 882.

The complaint reveals that on 6 February 1962, N. C. Homes was sold under an order of the Superior Court, and that, since then, defendant has had no further interest in N. C. Homes. See also *Johnson v. Johnson*, 262 N.C. 39, 136 S.E. 2d 230. The contract of 31 December 1953 was based upon A. Glendon Johnson's status as a partner in N. C. Homes. When his interest in the partnership terminated, so did the contract. According to its allegations, plaintiff furnished defendant no plans or plan books after 6 February 1962.

Nothing else appearing, we would assume that all books, plans, plates, etc. on hand on 6 February 1962 were sold as assets of the partnership and that, in the division of the proceeds, A. Glendon Johnson received his one-fourth part thereof. The complaint alleges, however, that the partnership was sold "subject to questions as to ownership by the partnership of the 'name' and rights to use certain 'plates.'" What this allegation means or connotes, we do not know. If the title to any of the property, which was sold as partnership assets, was then in dispute and the judicial sale was made "subject to questions as to ownership," it is nonetheless clear that the complaint in this case does not state a cause of action, either for conversion or for the recovery of "plates," plan books, or other personal property and damages for their detention. The demurrer was properly sustained.

Judgment affirmed.

LAKE, J. took no part in the consideration or decision of this case.